THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

MARIA MINA FABBROCINI, M.D.,
Individually, and on behalf of all other similarly
situated individuals,

   Plaintiff,           Case No. 19-cv-198

 v.

ROBERT PEARCE, M.D., individually, and
BOARD OF REGENTS OF THE UNIVERSITY OF
WISCONSIN SYSTEM

   Defendants.

---

## COMPLAINT

---

Plaintiff Maria Mina Fabbrocini, M.D., individually, and on behalf of all other similarly situated individuals, by her attorneys, Pines Bach LLP, as a complaint against Defendants Robert Pearce, M.D. and the Board of Regents of the University of Wisconsin System, alleges as follows:

### INTRODUCTION

1. This action is: (a) under Plaintiff class's First Cause of Action set forth below a claim for compensatory and punitive damages and attorneys' costs and fees, brought pursuant to 42 U.S.C. §§ 1983 and 1988, for a violation by Defendant Dr. Robert Pearce, acting in his individual capacity under the color of state law, of Plaintiff class's right to freedom from sex discrimination granted by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and (b) in the alternative to

1

Plaintiff class's First Cause of Action, Plaintiff class's Second Cause of Action sets forth a claim for compensatory and liquidated damages and attorneys' costs and fees, to redress the legal and equitable harms suffered by Plaintiff class when Defendant Board of Regents of the University of Wisconsin System deprived them of equal pay with men in violation of the Equal Pay Act of 1963, as amended (29 U.S.C. § 206(d)).

## JURISDICTION & VENUE

2. This Court has original jurisdiction over Plaintiff's First Cause of Action pursuant to 28 U.S.C. § 1331, which provides for original district court jurisdiction over cases presenting federal questions, and the cause of action arises under the United States Constitution and 42 U.S.C. § 1983. Over Plaintiff Class's Second Cause of Action, the Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, as well as under § 16(b) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 216(b)), and as incorporated into the Equal Pay Act.

3. Venue in this district is proper under 28 U.S.C.A. § 1391(b) because this is the judicial district in which all the events and omissions giving rise to these claims occurred.

## PARTIES

*The Named Plaintiff*

4. Plaintiff Maria Mina Fabbrocini, M.D. ("Dr. Fabbrocini" or "Named Plaintiff") is an anesthesiologist employed by the UW School of Medicine and Public Health within the Department of Anesthesiology. Dr. Fabbrocini is a female adult resident of the United States and the State of Wisconsin who, at all times relevant to this

Complaint, was an "employee" within the definition of the Equal Pay Act as incorporated from the definition contained in § 3(e) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 203(e)).

*Defendants*

5.     Defendant Robert Pearce, M.D. ("Dr. Pearce") is sued in his individual capacity. Defendant is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this Complaint. Dr. Pearce is the former Chair of the Department of Anesthesiology at the UW School of Medicine and Public Health.

6.     Defendant Board of Regents of the University of Wisconsin System ("the University") is organized and existing pursuant to Wis. Stat. § 15.91 and Wis. Stat. Chapter 36 and is charged with the governance of the University of Wisconsin System. The University is and was at all times relevant to this Complaint, an "employer" and an "enterprise engaged in commerce or in the production of goods for commerce" within the definitions of the Equal Pay Act as incorporated from the definitions contained in § 3(d) and § 3(s) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. §§ 203(d) and (s)).

*Class Allegations*

7.     The Named Plaintiff brings this action for herself and, pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of the Class of persons similarly situated.

8. The Named Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All female physicians who were employed by the UW School of Medicine and Public Health, Department of Anesthesiology ("the Department") at any time between March 13, 2013 to the present.

9. The Named Plaintiff represents and is a member of the Class.

10. The requirements of Federal Rule of Civil Procedure 23 are satisfied in that:

   a. The Class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Although the Named Plaintiff does not know the exact number of members in the Class, there are currently 32 female physicians within the Department, and upon information and belief, there are dozens more female physicians who were previously employed by the Department since March 13, 2013 but are no longer so employed. Disposition of the claims in a class action will provide substantial benefit to the parties and the Court by avoiding multiplicity of identical suits.

   b. There are questions of law and fact common to members of the Class. Fed. R. Civ. P. 23(a)(2). Such questions include, but are not limited to:

   i. Whether Dr. Pearce's intentional or willful failure to provide equal pay, equal advancement and administrative opportunities, and a non-hostile work environment to female physicians violates the equal protection guarantee of the Fourteenth Amendment of

the United States Constitution by discriminating against female physicians on the basis of sex without adequate justification.

ii. Whether the failure of the Board of Regents for the University of Wisconsin System to provide equal pay to female physicians with comparable qualifications to their male peers violates the Equal Pay Act of 1963, as amended (29 U.S.C. § 206(d)).

c. The claims of Named Plaintiff are typical of those of the Class, as her claims all arise from the same sex discriminatory practices of Dr. Pearce that denied female physicians in the Department equal pay, equal opportunities, and a non-hostile work environment; as well as the failure of the Board of Regents of the University of Wisconsin System to provide equal pay to female physicians in the Department, and are based on the same theories of law.

d. The Named Plaintiff is capable of fairly and adequately protecting the interests of the class, and does not have any interests antagonistic to the Class. The Named Plaintiff as well as the Class all seek a judgment awarding Plaintiffs damages to repair the substantial injuries caused by the sex discriminatory practices of Defendants that have denied female physicians in the Department equal pay and Fourteenth Amendment equal protection concerning equal pay, equal opportunity, and a non-hostile work environment; to punish Defendants' conduct; and to prevent such discriminatory practices in the future.

e. This action is maintainable as a class action under Rule 23(b)(2) because Defendants' practice and policy of paying women physicians less than

5

their comparable male counterparts and Defendant Dr. Pearce's practices and policies that denied female physicians equal opportunity and a non-hostile work environment apply generally to the Class as a whole.

## STATEMENT OF FACTS

11. Dr. Fabbrocini holds an M.D. from the University of Wisconsin School of Medicine and Public Health. She completed her medical residency at University of Wisconsin Hospital and Clinics, and she completed a fellowship in Pediatric Anesthesiology and Pediatric Cardiac Anesthesiology at Children's Hospital of Philadelphia. She is board certified in Anesthesiology.

12. Dr. Fabbrocini was first hired by the University of Wisconsin School of Medicine and Public Health, Department of Anesthesiology, on September 29, 2008.

13. Since that time Dr. Fabbrocini has been continuously and is currently employed by the Department.

14. At all times relevant to this complaint, Dr. Fabbrocini has worked between .6 and .75 FTE.

15. Throughout the time period relevant to this Complaint, Dr. Fabbrocini has had extensive experience and expertise in her medical field and has maintained a respected reputation among her peers, including being ranked in the top five pediatric anesthesiologists of Dane County from 2012 to present, four years of which she ranked number one.

16. From 2006 until 2017, Dr. Pearce was the Chair of the Department.

17. As Chair of the Department, Dr. Pearce was primarily accountable for the pay and working conditions within the Department.

*Unequal Pay*

18. From 2006 to 2017, Dr. Pearce as Chair was responsible for determining University salaries and awarding discretionary pay raises, bonuses, and research awards to physicians in the Department.

19. Those determinations were left entirely to his discretion as the Chair of the Department with no regard to merit.

20. At all times relevant to this complaint, Dr. Fabbrocini performed substantially equal or greater work, the performance of which requires substantially equal or greater skill, effort, and responsibility as that of comparable males within the Department, but was paid less.

21. This difference in pay was caused by, among other gender discriminatory reasons, Dr. Pearce providing higher discretionary awards to the comparable male physicians.

22. Due to concerns about pay inequity in the Department, Dr. Fabbrocini along with other female physicians in the Department petitioned the administration of University of Wisconsin-Madison ("UW-Madison"), in 2015, to conduct a review of the Department's compensation plans with respect to gender equity.

23. UW-Madison conducted a review of the Department's compensation.

24. Dr. Pearce was responsible for providing data necessary for UW-Madison's review.

25. Dr. Pearce provided UW-Madison with incomplete and erroneous data.

26. For instance, of the 74 physicians in the Department only 60 faculty salaries were provided by Dr. Pearce for UW-Madison's review of the compensation plan.

27. Dr. Pearce did not submit Dr. Fabbrocini's compensation data for UW-Madison's Review of the compensation plan.

28. Due to this inaccurate data, UW-Madison incorrectly concluded that no gender inequities in pay or leadership opportunities existed in the Department of Anesthesiology.

29. In fact, significant discrepancies in University pay between Dr. Fabbrocini and her male colleagues and between female and male physicians as a whole existed throughout Dr. Pearce's tenure as Chair of the Department.

30. The issue of gender inequity in the compensation plan was further raised by the UW-Madison in a 2017 climate review of the Department leading to an announcement by UW-Madison in 2018 that the Department would undergo a compensation review.

*Unequal Opportunity*

31. As Chair, Dr. Pearce was also responsible for appointing physicians into leadership positions within the Department.

32. Leadership appointments were made at the sole discretion of the Chair, and were not open to application, nomination or vote.

33. Leadership positions in the Department were and are accompanied by additional administrative pay.

34. Dr. Pearce did not appoint Dr. Fabbrocini or other women to leadership positions and, as a direct consequence, they were deprived of the related administrative pay.

35. During his tenure, Dr. Pearce instituted a policy against considering part-time faculty for leadership roles.

36. That policy made Dr. Fabbrocini and other women ineligible for leadership positions and resultant administrative pay.

37. Dr. Fabbrocini was denied opportunity to advance to leadership positions on the basis of her sex.

38. Dr. Pearce's policy against part-time faculty serving in leadership was a pretext for sex discrimination. For example, in 2014, 85.7% of part-time physicians in the Department were women; overall in the Department only 6.5% of men were part-time compared to 65% of women.

39. Additionally, Dr. Pearce discouraged Dr. Fabbrocini's and other female physicians' research interests and did not provide Dr. Fabbrocini and other female physicians with mentorship opportunities in their research areas.

40. As a result, Dr. Fabbrocini and other women did not have access to vital resources required for research projects.

41. In comparison, Dr. Pearce granted men in the Department substantial discretionary research dollars and mentorship opportunities.

*Hostile Work Environment*

42. Moreover, Dr. Pearce's customs created a hostile work environment for Dr. Fabbrocini and women in the Department.

43. In the UW-Madison's 2017 climate report, male faculty described the environment in the Department as a *boy's club*, *frat-boy environment*, and *good-old boy network*.

44. The UW-Madison described the Department as an environment "of tolerated disrespect, a lack of open eligibility for advancement and persistent underrepresentation of women. . . an undercurrent of male centrism that actively influences workplace conditions through the Department."

45. To that end, Dr. Pearce left male physicians in significant leadership positions for extended periods of time despite well-documented practices of disrespect toward women.

46. Dr. Pearce also tolerated a culture of physical intimidation and bullying in the Department, which often found woman physicians as the recipients.

47. For instance, due to Dr. Pearce's recurrent failure to discipline a male physician with a documented history of physical abuse toward women in the Department, Dr. Fabbrocini suffered a violent attack by that physician when he, in 2010, grabbed Dr. Fabbrocini by the throat and violently shook her while shouting in her face.

48. Additionally, Dr. Pearce's refusal to discipline male physicians with a history of disrespect, violence, and other disturbing behaviors toward women resulted

in the serial sexual assault of a multitude of anesthetized female patients by a male physician, even after reports of such assaults were made to Dr. Pearce.

49. Furthermore, Dr. Pearce permitted a culture of demeaning female physicians.

50. Dr. Fabbrocini and other female pediatric anesthesiologists were frequently referred to as "candy-stripers," "the crying hospital," and "candyland."

51. As chair, Dr. Pearce publicized the research and service achievements of male physicians, while disregarding the accomplishments of female physicians, including Dr. Fabbrocini.

52. Women in the Department, including Dr. Fabbrocini, were assigned parking spaces that were farther away from the hospital entrance then their male colleagues; some with 15-20 years of experience working for the Department were not assigned parking spaces at all.

53. Dr. Pearce's decisions to award male physicians greater amounts of discretionary pay than women physicians, to deny women leadership appointments while maintaining in those positions men with a documented history of demeaning, disrespectful, physically intimidating, and sometimes violent behavior toward women, to deny women equal access to mentorship and research resources, to permit a hostile work environment filled with numerous incidents of physical and verbal bullying toward women created an environment in which female physicians, including Dr. Fabbrocini, were substantially disadvantaged from their male employees.

## COUNT I
### Deprivation of Equal Protection
### U.S. CONST. Amend. XIV
### (42 U.S.C. § 1983)
### § 1983 Violation

54. For her cause of action against Defendant Dr. Pearce for sex discrimination under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983, Named Plaintiff re-alleges each of the preceding paragraphs as though fully set forth herein.

55. By engaging in the conduct described in the preceding paragraphs, Defendant Dr. Pearce discriminated against the Named Plaintiff and all others similarly situated on the basis of sex, while acting under color of state law, in violation of their rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

56. There is no rational, let alone important, justification for such discrimination.

57. Defendant Dr. Pearce's conduct, as described above, caused Named Plaintiff and all others similarly situated to suffer substantial damages, including but not limited to loss of compensation (past and future) and emotional distress.

58. Defendant Dr. Pearce's conduct, as described above, was willful and malicious and/or undertaken with intentional or reckless disregard of Named Plaintiff's and all others similarly situated's federally protected rights, thereby entitling them to an award of punitive damages.

## COUNT II
## EQUAL PAY ACT CLAIM

59. For her cause of action against Defendant the Board of Regents of the University of Wisconsin System for deprivation of equal pay under the Equal Pay Act of 1963, as amended (29 U.S.C. § 206(d)), Named Plaintiff re-alleges each of the preceding paragraphs as though fully set forth herein.

60. At all relevant times, the University has been aware that the Equal Pay Act applies to it or showed reckless disregard whether or not the Equal Pay Act applies to it.

61. As to Dr. Fabbrocini and other female physicians' pay, the University violated the Equal Pay Act willfully, and some violations remain ongoing.

62. Dr. Fabbrocini and other female physicians have suffered and continue to suffer economic damages as a result of the University's violations of the Equal Pay Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the putative class, requests judgment against Defendant Dr. Robert Pearce,

As to First Cause of Action:

A. Compensatory and punitive damages;

B. Pursuant to 42 U.S.C. § 1988, the expenses of this action, including reasonable attorneys' fees and costs;

C. Such other relief as the Court may deem just and proper.

WHEREFORE, Plaintiff, on behalf of herself and the putative class, requests judgment against Defendant the Board of Regents of the University of Wisconsin System,

As to the Second Cause of Action:

A. Compensatory damages for the amount shown to be due to each class member for the University's failure to pay Dr. Fabbrocini and all others similarly situated an amount equal to that of comparable males for the three years immediately prior to the filing of this lawsuit and from the date of the filing of this lawsuit up to the date of judgment;

B. Liquidated damages in an amount equal to the amount awarded in compensatory damages to each class member;

C. The expenses of this action, including reasonable attorneys' fees and costs;

D. Such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Respectfully submitted this 13th day of March, 2019.

                                        PINES BACH LLP

                                        */s/ Tamara B. Packard* .
                                        Lester A. Pines, SBN 1016543
                                        Tamara B. Packard, SBN 1023111
                                        Beauregard W. Patterson, SBN 1102842

                                        *Attorneys for Plaintiff Maria Mina Fabbrocini, individually, and on behalf of all others similarly situated*

Mailing Address:
122 West Washington Ave.
Suite 900
Madison, WI 53703
(608) 251-0101 (telephone)
(608) 251-2883 (facsimile)
lpines@pinesbach.com
tpackard@pinesbach.com
bpatterson@pinesbach.com